UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

CHARLES W. STOUT, III, and
MANAGEMENT REVENUE GROUP, LLC,

                                        Plaintiffs,

        -vs-

GEORGE E. WEAVER, HOLLY WEAVER,
RONALD DiFRANCO, GHRW, LLC, and
MOUNTAIN COMMUNICATION SYSTEMS, LLC,

                                        Defendants.

**COMPLAINT**

Case Number:

**JURY TRIAL DEMANDED**

---

Plaintiffs, CHARLES W. STOUT, III, and MANAGEMENT REVENUE GROUP, LLC, for their Complaint against the defendants, GEORGE E. WEAVER, HOLLY WEAVER, RONALD DiFRANCO, GHRW, LLC, and MOUNTAIN COMMUNICATION SYSTEMS, LLC, allege:

## PARTIES

1.      Plaintiff, CHARLES W. STOUT, III (hereinafter "Mr. Stout"), is an individual, residing at 635 Buyers Road, Collegeville, PA 19426.

2.      Plaintiff, MANAGEMENT REVENUE GROUP, LLC. (hereinafter "MRG"), is a Delaware limited liability company, with its principal place of business located at 635 Buyers Road, Collegeville, PA 19426.

3.      Mr. Stout is the sole member and manager of MRG.

4.      Defendant, GEORGE E. WEAVER (hereinafter "Mr. Weaver), is an individual, residing at 955 North Main Street, Mars Hill, NC 28754.

5.      Defendant, HOLLY WEAVER (hereinafter "Mrs. Weaver), is an individual, residing at 955 North Main Street, Mars Hill, NC 28754.

6.      Defendant, RONALD DiFRANCO (hereinafter "Mr. DiFranco"), is an individual, residing at 908 Markham Lane, Austin, TX 78753.

7.      Upon information and belief, defendant, GHRW, LLC (hereinafter "GHRW"), is a North Carolina limited liability company, with its principal place of business located at 955 North Main Street, Mars Hill, NC 28754.

8.      Upon information and belief, Mr. and Mrs. Weaver are the only members and managers of GHRW.

9.      Upon information and belief, defendant, MOUNTAIN COMMUNICATION SYSTEMS, LLC (hereinafter "MCS"), is a North Carolina limited liability company, with its with its principal place of business located at 955 North Main Street, Mars Hill, NC 28754.

10.      Upon information and belief, Mr. and Mrs. Weaver are the only members and managers of MCS.

## JURISDICTION and VENUE

11.      This Court has diversity jurisdiction of the instant action pursuant to 28 U.S.C. § 1332(a)(1), because the instant action is between citizens of different States, and the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs.

12.      The defendants have the requisite minimum contacts with Pennsylvania to permit the assertion of personal jurisdiction over them by this Court.

13.      Furthermore, the defendants have consented contractually to the jurisdiction of the Pennsylvania courts.

14.      Venue is proper in the Eastern District of Pennsylvania, pursuant to 28 U.S.C. § 1391(a)(2), because a substantial part of the events or omissions giving rise to the claims set forth below occurred in the Eastern District of Pennsylvania.

15.     In addition, venue is also proper pursuant to 28 U.S.C. § 1391(a)(3).

## FACTUAL BACKGROUND

16.     On or about November 4, 2009, MRG entered into two Sales Representative Agreements (hereinafter "TZAM Agreements") with TZAM Diagnostics, LLC, 1824 Wilmette Avenue, Wilmette, IL. 60091 (hereinafter "TZAM").

17.     Pursuant to the TZAM Agreements, MRG became the exclusive sales representative for TZAM in the States of Indiana, Ohio, Pennsylvania (minus Philadelphia), and Massachusetts (only Boston). Subsequently, all of Pennsylvania, including Philadelphia, and all of Massachusetts, including Boston, was granted to MRG. In addition, MRG became the non-exclusive sales representative for TZAM in the States of Arizona, California, Connecticut, Kansas, New Jersey, New York (minus New York City), Rhode Island, and the District of Columbia. Subsequently, MRG received authority to work in Maryland, Virginia, Tennessee, and Oklahoma. Eventually, by agreement dated August 1, 2010, MRG also became the exclusive sales representative for TZAM in the Commonwealth of Puerto Rico.

18.     In order to carry out its responsibilities under the TZAM Agreements, MRG subsequently entered into numerous independent contractor agreements with individuals and entities throughout the United States, thus creating a sales force to service the TZAM Agreements.

19.     In addition, on March 7, 2010, MRG also entered into a Divisional Management Agreement with GHRW (hereinafter "GHRW Agreement"), pursuant to which GHRW agreed to manage the efforts of the MRG sales force in a specified region of the MRG territory.

20.     Also in March of 2010, MRG also entered into a Divisional Management Agreement with Mr. DiFranco (hereinafter "DiFranco Agreement"), pursuant to which Mr. DiFranco agreed to manage the efforts of the MRG sales force in a specified region of the MRG territory.

21.     As a result of the efforts of Mr. Stout, MRG, and the MRG sales force, MRG developed a number of lucrative accounts for TZAM. As TZAM became licensed to provide diagnostic laboratory services in more and more states, the revenues generated by MRG for TZAM increased geometrically under the TZAM Agreements, with a proportional increase in the sales commissions earned by MRG.

22.     Upon information and belief, at some point in July or August of 2010, defendants Mr. Weaver, Mrs. Weaver, and Mr. DiFranco, acting individually and through their companies, GHRW and MCS, entered into a conspiracy to steal MRG's business with TZAM from Mr. Stout and MRG.

23.     In furtherance of this conspiracy, the defendants registered a limited liability company in Pennsylvania named Management Revenue Group, LLC (hereinafter "Sham MRG").

24.     The Sham MRG is not a real company. It has no place of business. Its registered address is a mail drop operated by a commercial registered office provider. Its only business is the theft of the real MRG's business with TZAM.

25.     On October 1, 2010, the defendants sent a "Cease and Desist Letter," ostensibly from the Sham MRG to the real MRG, making various false, fraudulent, and malicious statements and demands pertaining to MRG's business with TZAM. The "Cease and Desist Letter" was faxed to Mr. Stout and, upon information and belief, to others, from defendant MCS's fax machine.

26.     Among other things, the defendants stated in their "Cease and Desist Letter" of October 1, 2010, that: "It has come to our attention that you are operating a business entity utilizing our Company name at 635 Buyers Road, Collegeville, PA 19425 [sic]."

27.     Of course, the "Company name" belonged to Mr. Stout, and the defendants knew it.

28.     Mr. Stout has owned the company named Management Revenue Group, LLC since April 11, 2001.   MRG has been a registered LLC in Delaware since April 11, 2001. Although MRG's registration in Delaware was suspended for non-payment of franchise taxes for a period of time, the franchise taxes were subsequently paid, and the Delaware registration of MRG has been reinstated.

29.     More importantly, Mr. Stout has been the sole owner of MRG continuously from April 11, 2001, until the present.

30.     The defendants' statement, in their "Cease and Desist Letter" of October 1, 2010, that the name Management Revenue Group, LLC, or MRG, belongs to them, is false, fraudulent, and malicious.

31.     At all times relevant herein, the defendants have known that MRG is a company owned by Mr. Stout; have known that MRG has contracts in force with TZAM; have known that MRG has contracts in force with its sale force (including Mr. DiFranco and Mr. and Mrs. Weaver's company, GHRW, among many others); and have known that the revenues being generated by MRG pursuant to these contracts were substantial and increasing geometrically every month.

32.     Upon information and belief, it was not a coincidence that the defendants decided to call their sham company Management Revenue Group, LLC, the exact name of the real company owned by Mr. Stout.   Rather, they gave this name to their sham company as part of their conspiracy to steal MRG's business pursuant to the TZAM Agreements.

33.     The defendants, in their "Cease and Desist Letter" of October 1, 2010, also state: "[W]e have evidence that you . . . entered into a contract with TZAM Diagnostics, LLC, Wilmette, IL for the purpose of representation of their products or services.   These contracts are unauthorized by our company and considered to be null and void as of the date of signing."

34.     Presumably, one bit of evidence that the defendants had for the existence of the contract between MRG and TZAM was the fact that in their own contracts with MRG, which

they signed in March of 2010, the first WHEREAS clause states: "WHEREAS Company is engaged in the marketing and sale of . . . services on behalf of Tzam Diagnostics LLC." The "Company" is defined, in the contracts signed by the defendants in March of 2010, as follows: "MRG, LLC, address: '635 Buyers Rd., Collegeville, PA 19426', hereinafter referred to as 'Company.'"

35.     The respective contracts between MRG, on the one hand, and the defendants, on the other hand, are signed, on behalf of MRG, by Mr. Stout and, on behalf of the defendants, by Messrs. Weaver and DiFranco, respectively.

36.     The defendants signed their respective contracts with MRG long before they conceived of the clever idea of forming their own company, calling it Management Revenue Group, LLC, and pretending that their Sham MRG was in fact the real MRG.

37.     The defendants' statement, in their "Cease and Desist Letter" of October 1, 2010, that, "These contracts [between MRG and TZAM] are unauthorized by our company and considered to be null and void as of the date of signing," is false, fraudulent, and malicious.

38.     The defendants, in their "Cease and Desist Letter" of October 1, 2010, also state: "We demand that you . . . immediately notify all affected Independent Contractors and TZAM Diagnostics forthwith that [the following] ... contracts are without authority and to be deemed null and void: (1) ... any contracts with Independent Contractors for the sale of TZAM Diagnostics, LLC products or services."

39.     The defendants' statement, in their "Cease and Desist Letter" of October 1, 2010, that the contracts between MRG and its Independent Contractors, i.e. its sale force, "are without authority and to be deemed null and void," is false, fraudulent, and malicious.

40.     The defendants, in their "Cease and Desist Letter" of October 1, 2010, also state: "We demand that you . . . immediately notify all affected Independent Contractors ... forthwith that [there is to be a halt in the]:  (2) Distribution of any revenue under the purported contracts."

41.    The defendants' statement, in their "Cease and Desist Letter" of October 1, 2010, that the distribution of any revenue (i.e. sales commissions) from MRG to its Independent Contractors, i.e. its sale force, is to be halted "immediately" and "forthwith" is false, fraudulent, and malicious.

42.    The defendants, in their "Cease and Desist Letter" of October 1, 2010, also state: "We demand that you . . . immediately notify ... TZAM Diagnostics forthwith that [they are to halt]: (2) Distribution of any revenue under the purported contracts."

43.    The defendants' statement, in their "Cease and Desist Letter" of October 1, 2010, that the distribution of any revenue (i.e. sales commissions) from TZAM to MRG is to be halted "immediately" and "forthwith" is false, fraudulent, and malicious.

44.    The defendants, in their "Cease and Desist Letter" of October 1, 2010, also state: "This will serve as your legal notice to cease and desist all further actions described above.  You are hereby instructed to comply with this letter immediately or face legal sanctions under applicable Federal and State law."

45.    The defendants' statement, or implication, in their "Cease and Desist Letter" of October 1, 2010, that the actions of the plaintiffs were illegal under applicable Federal and State law, is false, fraudulent, and malicious.

46.    Upon information and belief, the defendants sent a copy of this "Cease and Desist Letter" to TZAM on or about October 1, 2010.

47.    Upon information and belief, the defendants sent a copy of this "Cease and Desist Letter" to MRG's Independent Contractors, i.e. its sale force, on or about October 1, 2010.

48.    Upon information and belief, the defendants sent a copy of this "Cease and Desist Letter" to Tom Corbett, the Attorney General of Pennsylvania, on or about October 1, 2010.

49.    Upon information and belief, the defendants posted a copy of this "Cease and Desist Letter" on their website on or about October 1, 2010.

50.    In addition to disseminating and publishing their "Cease and Desist Letter," the defendants also conducted at least two mass telephone conferences with MRG's sales force, in which they stated, inter alia, that MRG was not a legal company, that MRG was not authorized to enter into contracts with TZAM and with its Independent Contractors, that the actions of the plaintiffs were illegal under applicable Federal and State law, that Mr. Stout was a fraud and a liar, that the Independent Contractors should breach their contracts with MRG, stop working for MRG, and start working for the defendants instead.

51.    At least two Independent Contractors have notified MRG thus far of their intention to breach their contracts with MRG, stop working for MRG, and start working for the defendants instead.

52.    In addition, upon information and belief, the defendants also conducted one or more telephone conferences with TZAM executives, in which they stated, inter alia, that MRG was not a legal company, that MRG was not authorized to enter into contracts with TZAM and with its Independent Contractors, that the actions of the plaintiffs were illegal under applicable Federal and State law, that Mr. Stout was a fraud and a liar, that TZAM should breach its contracts with MRG, stop making commission payments to MRG, and start working for the defendants instead.

53.    As of the date of this complaint, TZAM has failed to deliver to MRG lucrative new contracts that had been previously negotiated and agreed to, as between MRG and TZAM, because of the statements made to TZAM by the defendants.

## FIRST CAUSE OF ACTION
(Fraud)

54.     Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 53 above as though fully set forth herein.

55.     Defendants made representations of fact to the plaintiffs, to TZAM, to MRG's Independent Contractors, to the Attorney General of the Commonwealth of Pennsylvania, and to the public at large, in their "Cease and Desist Letter" of October 1, 2010.

56.     These representations of fact were untrue.

57.     These representations of fact were known to be untrue to the defendants at the time when they made them.

58.     These representations of fact were made to the plaintiffs, to TZAM, to MRG's Independent Contractors, to the Attorney General of the Commonwealth of Pennsylvania, and to the public at large in order to deceive them, and in order to induce them to act upon them.

59.     As a direct and proximate result of defendants' fraud, plaintiffs have suffered, and continue to suffer, damages.

60.     By reason of the foregoing, plaintiffs are entitled to recover from the defendants, and each of them, compensatory damages in an amount to be proven at trial, but believed to be in excess of $3,000,000.

61.     In addition, plaintiffs are also entitled to exemplary and punitive damages against the defendants, and each of them, of at least $10,000,000.

62.     Finally, because the defendants' activities are ongoing, and because plaintiffs lack an adequate remedy at law, plaintiffs are also entitled to a preliminary and permanent injunction, enjoining the defendants from committing any further fraudulent acts against the plaintiffs.

## SECOND CAUSE OF ACTION
(Fraud)

63.     Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 53 above as though fully set forth herein.

64.     Defendants made representations of fact to MRG's Independent Contractors in two or more the telephone conferences that they conducted with MRG's Independent Contractors.

65.     These representations of fact were untrue.

66.     These representations of fact were known to be untrue to the defendants at the time when they made them.

67.     These representations of fact were made to MRG's Independent Contractors in order to deceive them, and in order to induce them to act upon them.

68.     As a direct and proximate result of defendants' fraud, plaintiffs have suffered, and continue to suffer, damages.

69.     By reason of the foregoing, plaintiffs are entitled to recover from the defendants, and each of them, compensatory damages in an amount to be proven at trial, but believed to be in excess of $3,000,000.

70.     In addition, plaintiffs are also entitled to exemplary and punitive damages against the defendants, and each of them, of at least $10,000,000.

71.     Finally, because the defendants' activities are ongoing, and because plaintiffs lack an adequate remedy at law, plaintiffs are also entitled to a preliminary and permanent injunction, enjoining the defendants from committing any further fraudulent acts against the plaintiffs.

## THIRD CAUSE OF ACTION
### (Fraud)

72.     Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 53 above as though fully set forth herein.

73.     Defendants made representations of fact to TZAM in one or more the telephone conferences that they conducted with TZAM executives.

74.     These representations of fact were untrue.

75.     These representations of fact were known to be untrue to the defendants at the time when they made them.

76.     These representations of fact were made to TZAM executives in order to deceive TZAM, and in order to induce TZAM to act upon them.

77.     As a direct and proximate result of defendants' fraud, plaintiffs have suffered, and continue to suffer, damages.

78.     By reason of the foregoing, plaintiffs are entitled to recover from the defendants, and each of them, compensatory damages in an amount to be proven at trial, but believed to be in excess of $3,000,000.

79.     In addition, plaintiffs are also entitled to exemplary and punitive damages against the defendants, and each of them, of at least $10,000,000.

80.     Finally, because the defendants' activities are ongoing, and because plaintiffs lack an adequate remedy at law, plaintiffs are also entitled to a preliminary and permanent injunction, enjoining the defendants from committing any further fraudulent acts against the plaintiffs.

## FOURTH CAUSE OF ACTION
(Defamation)

81.     Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 53 above as though fully set forth herein.

82.     Defendants stated to TZAM, to MRG's Independent Contractors, to the Attorney General of the Commonwealth of Pennsylvania, and to the public at large, in their "Cease and Desist Letter" of October 1, 2010, that the plaintiffs were operating a business entity utilizing the defendants' company name; that the contracts between MRG and TZAM were unauthorized and considered to be null and void as of the date of signing; that the contracts between MRG and MRG's Independent Contractors were unauthorized and considered to be null and void as of the date of signing; that MRG was prohibited from distributing of any revenue under the contracts between MRG and MRG's Independent Contractors; that MRG was prohibited from receiving of any revenue under the contracts between TZAM and MRG; and that plaintiffs' actions were illegal under applicable federal and state laws.

83.     These statements of fact were false.

84.     These statements of fact were known to be false to the defendants at the time when they made them.

85.     These statements of fact were made to the plaintiffs, to TZAM, to MRG's Independent Contractors, to the Attorney General of the Commonwealth of Pennsylvania, and to the public at large in order to injure and defame the plaintiffs.

86.     As a direct and proximate result of defendants' defamation, plaintiffs have suffered, and continue to suffer, damages.

87.     By reason of the foregoing, plaintiffs are entitled to recover from the defendants, and each of them, compensatory damages in an amount to be proven at trial, but believed to be in excess of $3,000,000.

88.    In addition, plaintiffs are also entitled to exemplary and punitive damages against the defendants, and each of them, of at least $10,000,000.

89.    Finally, because the defendants' activities are ongoing, and because plaintiffs lack an adequate remedy at law, plaintiffs are also entitled to a preliminary and permanent injunction, enjoining the defendants from committing any further acts of defamation against the plaintiffs.

FIFTH CAUSE OF ACTION
(Defamation)

90.    Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 53 above as though fully set forth herein.

91.    Defendants stated to MRG's Independent Contractors, in two or more the telephone conferences that they conducted with MRG's Independent Contractors, that the plaintiffs were operating a business entity utilizing the defendants' company name; that the contracts between MRG and TZAM were unauthorized and considered to be null and void as of the date of signing; that the contracts between MRG and MRG's Independent Contractors were unauthorized and considered to be null and void as of the date of signing; that MRG was prohibited from distributing of any revenue under the contracts between MRG and MRG's Independent Contractors; that MRG was prohibited from receiving of any revenue under the contracts between TZAM and MRG; that plaintiffs' actions were illegal under applicable federal and state laws; and that Mr. Stout was a fraud and a liar.

92.    These statements of fact were false.

93.    These statements of fact were known to be false to the defendants at the time when they made them.

94.    These statements of fact were made to MRG's Independent Contractors in order to deceive them, and in order to injure and defame the plaintiffs.

95.    As a direct and proximate result of defendants' defamation, plaintiffs have suffered, and continue to suffer, damages.

96.    By reason of the foregoing, plaintiffs are entitled to recover from the defendants, and each of them, compensatory damages in an amount to be proven at trial, but believed to be in excess of $3,000,000.

97.    In addition, plaintiffs are also entitled to exemplary and punitive damages against the defendants, and each of them, of at least $10,000,000.

98.    Finally, because the defendants' activities are ongoing, and because plaintiffs lack an adequate remedy at law, plaintiffs are also entitled to a preliminary and permanent injunction, enjoining the defendants from committing any further acts of defamation against the plaintiffs.

## SIXTH CAUSE OF ACTION
### (Defamation)

99.    Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 53 above as though fully set forth herein.

100.    Defendants stated to TZAM, in one or more the telephone conferences that they conducted with TZAM executives, that the plaintiffs were operating a business entity utilizing the defendants' company name; that the contracts between MRG and TZAM were unauthorized and considered to be null and void as of the date of signing; that the contracts between MRG and MRG's Independent Contractors were unauthorized and considered to be null and void as of the date of signing; that MRG was prohibited from distributing of any revenue under the contracts between MRG and MRG's Independent Contractors; that MRG was prohibited from receiving of any revenue under the contracts between TZAM and MRG; that plaintiffs' actions were illegal under applicable federal and state laws; and that Mr. Stout was a fraud and a liar.

101.    These statements of fact were false.

102.    These statements of fact were known to be false to the defendants at the time when they made them.

103.    These statements of fact were made to TZAM executives in order to deceive them, and in order to injure and defame the plaintiffs

104.    These representations of fact were untrue.

105.    These representations of fact were known to be untrue to the defendants at the time when they made them.

106.    These representations of fact were made to TZAM executives in order to deceive TZAM, and in order to induce TZAM to act upon them.

107.    As a direct and proximate result of defendants' defamation, plaintiffs have suffered, and continue to suffer, damages.

108.    By reason of the foregoing, plaintiffs are entitled to recover from the defendants, and each of them, compensatory damages in an amount to be proven at trial, but believed to be in excess of $3,000,000.

109.    In addition, plaintiffs are also entitled to exemplary and punitive damages against the defendants, and each of them, of at least $10,000,000.

110.    Finally, because the defendants' activities are ongoing, and because plaintiffs lack an adequate remedy at law, plaintiffs are also entitled to a preliminary and permanent injunction, enjoining the defendants from committing any further acts of defamation against the plaintiffs.

## SEVENTH CAUSE OF ACTION
(Civil Conspiracy)

111.    Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 53 above as though fully set forth herein.

112.    Defendants agreed between and among themselves to conspire or scheme, to engage in illegal or unlawful acts, or to engage in lawful or legal acts by unlawful or illegal means, and have taken at least one act in furtherance thereof.

113.    As a direct and proximate result of defendants' civil conspiracy, plaintiffs have suffered, and continue to suffer, damages.

114.    By reason of the foregoing, plaintiffs are entitled to recover from the defendants, and each of them, compensatory damages in an amount to be proven at trial, but believed to be in excess of $3,000,000.

115.    In addition, plaintiffs are also entitled to exemplary and punitive damages against the defendants, and each of them, of at least $10,000,000.

116.    Finally, because the defendants' activities are ongoing, and because plaintiffs lack an adequate remedy at law, plaintiffs are also entitled to a preliminary and permanent injunction, enjoining the defendants from committing any further acts in furtherance of their civil conspiracy against the plaintiffs.

## EIGHTH CAUSE OF ACTION
(Breach of Contract)

117.    Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 53 above as though fully set forth herein.

118.    On March 7, 2010, MRG also entered into a Divisional Management Agreement with GHRW (hereinafter "GHRW Agreement"), pursuant to which GHRW agreed to manage the efforts of the MRG sales force in a specified region of the MRG territory.

119.   Pursuant to paragraph 2 of the GHRW Agreement, GHRW was required to "devote such time, energy and skill on a regular and consistent basis as is necessary to promote and sell [MRG's] services in the specified region(s) ... ."

120.   GHRW has breached its contractual obligations pursuant to paragraph 2 of the GHRW Agreement.

121.   Pursuant to paragraph 5 of the GHRW Agreement:   "During the term of this Agreement and for 3 years after its termination, [GHRW] shall not compete with [MRG] directly or indirectly an shall not attempt to market or sell, on behalf of any other person, firm, partnership, corporation or other entity the same as or similar to [MRG's] services with the region(s)."

122.   GHRW has breached its contractual obligations pursuant to paragraph 5 of the GHRW Agreement.

123.   Pursuant to paragraph 5 of the GHRW Agreement:  "Under no circumstances and at no time shall [GHRW] disclose to any person any of the secrets, methods or systems used by MRG.  All customer lists, brochures, reports, and other such information of any nature made available to [GHRW] by virtue of [GHRW's] association with [MRG] shall be held in strict confidence during the term of this Agreement and after its termination."

124.   GHRW has breached its contractual obligations pursuant to paragraph 5 of the GHRW Agreement.

125.   There were a number of other obligations and duties imposed by the GHRW Agreement on GHRW.

126.   GHRW has breached a number of other contractual obligations pursuant to the GHRW Agreement.

127.   By operation of law, implied in the GHRW Agreement was a covenant of good faith and fair dealing.

128.   GHRW has breached its covenant of good faith and fair dealing implied in the GHRW Agreement.

129.   As a result of GHRW's breach of contract, MRG has suffered, and continues to suffer, damages.

130.   By reason of the foregoing, MRG is entitled to recover from GHRW compensatory damages in an amount to be proven at trial, but believed to be in excess of $3,000,000.

131.   In addition, MRG is also entitled to exemplary and punitive damages against GHRW of at least $10,000,000.

132.   Finally, because the GHRW's activities are ongoing, and because MRG lacks an adequate remedy at law, MRG is also entitled to a preliminary and permanent injunction, enjoining GHRW from committing any further breaches of the GHRW Agreement.

## NINTH CAUSE OF ACTION
(Breach of Contract)

133.   Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 53 above as though fully set forth herein.

134.   In March, 2010, MRG also entered into a Divisional Management Agreement with Mr. DiFranco (hereinafter "DiFranco Agreement"), pursuant to which Mr. DiFranco agreed to manage the efforts of the MRG sales force in a specified region of the MRG territory.

135.   Pursuant to paragraph 2 of the DiFranco Agreement, Mr. DiFranco was required to "devote such time, energy and skill on a regular and consistent basis as is necessary to promote and sell [MRG's] services in the specified region(s) ... ."

136.   Mr. DiFranco has breached his contractual obligations pursuant to paragraph 2 of the DiFranco Agreement.

137.   Pursuant to paragraph 5 of the DiFranco Agreement:   "During the term of this Agreement and for 3 years after its termination, [Mr. DiFranco] shall not compete with [MRG] directly or indirectly an shall not attempt to market or sell, on behalf of any other person, firm, partnership, corporation or other entity the same as or similar to [MRG's] services with the region(s)."

138.   Mr. DiFranco has breached his contractual obligations pursuant to paragraph 5 of the DiFranco Agreement.

139.   Pursuant to paragraph 5 of the DiFranco Agreement:   "Under no circumstances and at no time shall [Mr. DiFranco] disclose to any person any of the secrets, methods or systems used by MRG.  All customer lists, brochures, reports, and other such information of any nature made available to [Mr. DiFranco] by virtue of [Mr. DiFranco's] association with [MRG] shall be held in strict confidence during the term of this Agreement and after its termination."

140.   Mr. DiFranco has breached his contractual obligations pursuant to paragraph 5 of the DiFranco Agreement.

141.   There were a number of other obligations and duties imposed by the DiFranco Agreement on Mr. DiFranco.

142.   Mr. DiFranco has breached a number of other contractual obligations pursuant to the DiFranco Agreement.

143.   By operation of law, implied in the DiFranco Agreement was a covenant of good faith and fair dealing.

144.   Mr. DiFranco has breach his covenant of good faith and fair dealing implied in the DiFranco Agreement.

145.    As a result of Mr. DiFranco's breach of contract, MRG has suffered, and continues to suffer, damages.

146.    By reason of the foregoing, MRG is entitled to recover from Mr. DiFranco compensatory damages in an amount to be proven at trial, but believed to be in excess of $3,000,000.

147.    In addition, MRG is also entitled to exemplary and punitive damages against Mr. DiFranco of at least $10,000,000.

148.    Finally, because Mr. DiFranco's activities are ongoing, and because MRG lacks an adequate remedy at law, MRG is also entitled to a preliminary and permanent injunction, enjoining Mr. DiFranco from committing any further breaches of the DiFranco Agreement.

## TENTH CAUSE OF ACTION
(Tortious Interference with Contract)

149.    Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 53 above as though fully set forth herein.

150.    Defendants have stated to TZAM executives, both in writing and in one or more the telephone conferences, that the plaintiffs were operating a business entity utilizing the defendants' company name; that the contracts between MRG and TZAM were unauthorized and considered to be null and void as of the date of signing; that the contracts between MRG and MRG's Independent Contractors were unauthorized and considered to be null and void as of the date of signing; that MRG was prohibited from distributing of any revenue under the contracts between MRG and MRG's Independent Contractors; that MRG was prohibited from receiving of any revenue under the contracts between TZAM and MRG; that plaintiffs' actions were illegal under applicable federal and state laws; and that Mr. Stout was a fraud and a liar.

151.    At the time of making said statements, the defendants were aware of the existence of the TZAM Agreements between MRG and TZAM.

152.   The defendants made said statements in order to interfere with the contracts between MRG and TZAM.

153.   The defendants' actions were wrongful, tortious, and unjustified.

154.   Defendants have tortiously interfered with MRG's contracts with TZAM.

155.   As a direct and proximate result of tortious interference with MRG's contracts with TZAM, plaintiffs have suffered, and continue to suffer, damages.

156.   By reason of the foregoing, plaintiffs are entitled to recover from the defendants, and each of them, compensatory damages in an amount to be proven at trial, but believed to be in excess of $3,000,000.

157.   In addition, plaintiffs are also entitled to exemplary and punitive damages against the defendants, and each of them, of at least $10,000,000.

158.   Finally, because the defendants' tortious interference is ongoing, and because plaintiffs lack an adequate remedy at law, plaintiffs are also entitled to a preliminary and permanent injunction, enjoining the defendants from continuing tortiously to interfere with MRG's contracts with TZAM.

## ELEVENTH CAUSE OF ACTION
### (Tortious Interference with Contract)

159.   Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 53 above as though fully set forth herein.

160.   Defendants have stated to MRG's Independent Contractors, i.e. MRG's sales force, both in writing and in two or more the telephone conferences, that the plaintiffs were operating a business entity utilizing the defendants' company name; that the contracts between MRG and TZAM were unauthorized and considered to be null and void as of the date of signing; that the contracts between MRG and MRG's Independent Contractors were unauthorized and

considered to be null and void as of the date of signing; that MRG was prohibited from distributing of any revenue under the contracts between MRG and MRG's Independent Contractors; that MRG was prohibited from receiving of any revenue under the contracts between TZAM and MRG; that plaintiffs' actions were illegal under applicable federal and state laws; and that Mr. Stout was a fraud and a liar.

161.     At the time of making said statements, the defendants were aware of the existence of Independent Contractor Agreements between MRG and each individual working for MRG as part of its sales force.

162.     The defendants made said statements in order to interfere with the contracts between MRG and the individuals working for MRG as part of its sales force.

163.     The defendants' actions were wrongful, tortious, and unjustified.

164.     Defendants have tortiously interfered with MRG's  Independent Contractor Agreements with its sales force.

165.     As a direct and proximate result of tortious interference with MRG's  Independent Contractor Agreements with its sales force, plaintiffs have suffered, and continue to suffer, damages.

166.     By reason of the foregoing, plaintiffs are entitled to recover from the defendants, and each of them, compensatory damages in an amount to be proven at trial, but believed to be in excess of $3,000,000.

167.     In addition, plaintiffs are also entitled to exemplary and punitive damages against the defendants, and each of them, of at least $10,000,000.

168.     Finally, because the defendants' tortious interference is ongoing, and because plaintiffs lack an adequate remedy at law, plaintiffs are also entitled to a preliminary and

permanent injunction, enjoining the defendants from continuing tortiously to interfere with MRG's Independent Contractor Agreements with its sales force.

## TWELFTH CAUSE OF ACTION
(Tortious Interference with Business Relations)

169.    Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 53 above as though fully set forth herein.

170.    Defendants have stated to TZAM executives, both in writing and in one or more the telephone conferences, that the plaintiffs were operating a business entity utilizing the defendants' company name; that the contracts between MRG and TZAM were unauthorized and considered to be null and void as of the date of signing; that the contracts between MRG and MRG's Independent Contractors were unauthorized and considered to be null and void as of the date of signing; that MRG was prohibited from distributing of any revenue under the contracts between MRG and MRG's Independent Contractors; that MRG was prohibited from receiving of any revenue under the contracts between TZAM and MRG; that plaintiffs' actions were illegal under applicable federal and state laws; and that Mr. Stout was a fraud and a liar.

171.    At the time of making said statements, the defendants were aware of the existence of a business relationship between and among the plaintiffs and TZAM.

172.    The defendants made said statements in order to interfere with the business relationship between and among the plaintiffs and TZAM.

173.    The defendants' actions were wrongful, tortious, and unjustified.

174.    Defendants have tortiously interfered with the business relationship between and among the plaintiffs and TZAM.

175.    As a direct and proximate result of defendants' tortious interference with business relationship between and among the plaintiffs and TZAM, plaintiffs have suffered, and continue to suffer, damages.

176.   By reason of the foregoing, plaintiffs are entitled to recover from the defendants, and each of them, compensatory damages in an amount to be proven at trial, but believed to be in excess of $3,000,000.

177.   In addition, plaintiffs are also entitled to exemplary and punitive damages against the defendants, and each of them, of at least $10,000,000.

178.   Finally, because the defendants' tortious interference is ongoing, and because plaintiffs lack an adequate remedy at law, plaintiffs are also entitled to a preliminary and permanent injunction, enjoining the defendants from continuing tortiously to interfere with the business relationship between and among the plaintiffs and TZAM.

### THIRTEENTH CAUSE OF ACTION
(Tortious Interference with Business Relations)

179.   Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 53 above as though fully set forth herein.

180.   Defendants have stated to MRG's Independent Contractors, i.e. MRG's sales force, both in writing and in two or more the telephone conferences, that the plaintiffs were operating a business entity utilizing the defendants' company name; that the contracts between MRG and TZAM were unauthorized and considered to be null and void as of the date of signing; that the contracts between MRG and MRG's Independent Contractors were unauthorized and considered to be null and void as of the date of signing; that MRG was prohibited from distributing of any revenue under the contracts between MRG and MRG's Independent Contractors; that MRG was prohibited from receiving of any revenue under the contracts between TZAM and MRG; that plaintiffs' actions were illegal under applicable federal and state laws; and that Mr. Stout was a fraud and a liar.

181.   At the time of making said statements, the defendants were aware of the existence of business relationship between and among the plaintiffs and the Independent Contractors working as MRG's sales force.

182.   The defendants made said statements in order to interfere with the business relationship between and among the plaintiffs and the Independent Contractors working as MRG's sales force.

183.   The defendants' actions were wrongful, tortious, and unjustified.

184.   The defendants' actions were intentional, and motivated solely by malice.

185.   Defendants have tortiously interfered with the business relationship between and among the plaintiffs and the Independent Contractors working as MRG's sales force.

186.   As a direct and proximate result of the defendants' tortious interference with the business relationship between and among the plaintiffs and the Independent Contractors working as MRG's sales force, plaintiffs have suffered, and continue to suffer, damages.

187.   By reason of the foregoing, plaintiffs are entitled to recover from the defendants, and each of them, compensatory damages in an amount to be proven at trial, but believed to be in excess of $3,000,000.

188.   In addition, plaintiffs are also entitled to exemplary and punitive damages against the defendants, and each of them, of at least $10,000,000.

189.   Finally, because the defendants' tortious interference is ongoing, and because plaintiffs lack an adequate remedy at law, plaintiffs are also entitled to a preliminary and permanent injunction, enjoining the defendants from continuing tortiously to interfere with the business relationship between and among the plaintiffs and the Independent Contractors working as MRG's sales force.

E.   Judgment awarding to the plaintiffs such other and further relief as to the Court may appear to be just, proper, and equitable.

Dated: October 14, 2010

GEIGER and ROTHENBERG, LLP
Attorneys for Plaintiffs

by: _____

Alexander Geiger, Esq. (AG-8974)
920 N. Broad Street, Suite 8
Lansdale, PA 19446
(215) 880-9439

- 27 -